UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

MAY 2 8 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

STEVEN ANTHONY LANGLEY, #367023,

     Petitioner,

v.

     Case No. 2:09cv436

Director, Department of Corrections,

     Respondent.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for a writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia. For the reasons stated herein, the Court recommends that the instant petition for a writ of habeas corpus be DENIED.

## I. STATEMENT OF THE CASE

### A. Background

Upon pleading guilty, Petitioner, Steven Anthony Langley ("Langley"), was convicted in the Circuit Court of the City of Norfolk, Virginia, on May 11, 2006, of one (1) count of second degree murder. On October 25, 2006, Langley was sentenced to a

total of forty (40) years in prison with eighteen (18) years and five (5) months suspended, resulting in a total active sentence of twenty-one (21) years and seven (7) months. Sentencing Order, Commonwealth v. Langley, No. CR06000931-00 (Va. Cir. Ct. Oct. 25, 2006). Langley did not file an appeal, and therefore, his conviction became final on November 27, 2006,[1] thirty (30) days after the circuit court's sentencing order was entered. See 28 U.S.C. § 2244(d)(1)(A); Va. Code § 8.01-675.3. Langley did not initiate any post-conviction proceedings in state court.

On August 18, 2009,[2] while in the custody of the Virginia Department of Corrections at the Sussex I State Prison, Langley executed the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.[3] This Court conditionally filed Langley's

---

[1] The time in which Langley could appeal his conviction expired on Friday, November 24, 2006, which was a state holiday. See Va. Code §§ 2.2-3300, 17.1-207. Therefore, Langley had until Monday, November 27, 2006, to file an appeal. See Va. Code § 1-210(B).

[2] The Court notes that the United States Supreme Court promulgated certain amendments to the Rules Governing Section 2254 Cases in the United States District Courts, which became effective on December 1, 2004. As amended, Rule 3(d) adopts the prison mailbox rule with regard to § 2254 petitions. Accordingly, the Court recognizes the prison mailbox rule for federal habeas petitions. In this case, Langley's petition was signed on August 18, 2009; however, it was not postmarked until August 28, 2009. The Court assumes, without finding, that the petition was executed on August 18, 2009, the day it was signed. Further, the Court considers the petition filed, for purposes of the statute of limitations, on that date.

[3] The Court notes that it appears that Langley's petition, accompanying brief, and response to Respondent's Motion to Dismiss

2

petition on September 3, 2009. Accompanying his petition, Langley filed a motion for leave to proceed in forma pauperis, which was denied on September 17, 2009. Subsequently, Langley paid the required $5.00 filing fee, and the Court ordered the petition filed on December 10, 2009. On December 28, 2009, Respondent filed his Rule 5 Answer and Motion to Dismiss, accompanied by a supporting brief, and a Roseboro Notice pursuant to Local Rule 7(K). Langley filed his response to Respondent's Motion to Dismiss on January 5, 2010.

Upon reviewing all of the pleadings in the case, it became apparent that the Court needed additional information regarding Langley's mental illness. Accordingly, on March 25, 2010, the Court entered an order expanding the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, and directed Respondent to provide Langley's mental health records. On April 6, 2010, Respondent filed a Motion to Seal, and supporting brief. On April 7, 2010, Respondent filed Langley's mental health records under seal. (Doc. No. 21.) On May 13, 2010, the Court entered an order providing Langley with an opportunity to admit or deny the correctness of the materials provided by Respondent. (Doc. No. 22.) Langley did not file a response.

---

were filed with the assistance of "an inmate helper."

3

## B. Grounds Alleged

Langley asserts that he is entitled to relief under 28 U.S.C. § 2254 because his Due Process rights[4] were violated when the circuit court accepted his plea of guilty. Specifically, Langley alleges that he was not advised that "malice aforethought" or "an intent to cause the victim's death" were elements of second degree murder, and therefore, he did not receive notice of the true nature of the charge against him. As such, Langley argues that his guilty plea was not knowing and intelligent. Langley also argues that the indictment against him was invalid because it "did not charge him with malice aforethought." (Pet'r's Br. 6.)

## II.  RESPONDENT'S MOTION TO SEAL

Pursuant to this Court's March 25, 2010 order expanding the record, Respondent filed seventy-one (71) pages of mental health records regarding Langley's mental illness and treatment while in the custody of the Department of Corrections. Respondent also

---

[4] Langley asserts that the acceptance of his guilty plea violated both the state and federal due process clauses. "A federal court may not issue a writ on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984); see also Hinman v. McCarthy, 676 F.2d 343, 349 (9th Cir. 1982) (noting that in habeas corpus proceedings, the court must determine whether there has been a violation of the federal Constitution, not a state constitution); Chance v. Garrison, 537 F.2d 1212, 1215 (4th Cir. 1976) ("Matters of state law not involving federal constitutional issues are not appropriate grounds for federal habeas corpus relief."). Accordingly, the Court will only consider Langley's petition insofar as it alleges a violation of the federal Due Process Clause.

4

filed a motion to seal the documents. No opposition to the motion to seal was filed.

Because the documents contain personal and sensitive information regarding Langley's mental health and medical treatment, the Court FINDS it appropriate to seal the records. Accordingly, Respondent's Motion to Seal (Doc. No. 18) is GRANTED.

### III.  REQUEST TO APPOINT COUNSEL

In the brief accompanying Langley's petition, he asks the Court to appoint an attorney to assist him with his habeas corpus proceeding. There is no right to counsel for state prisoners seeking habeas corpus relief in the federal courts in non-death penalty cases. See McCleskey v. Zant, 499 U.S. 467, 495 (1991) ("Nor does it imply that there is a constitutional right to counsel in federal habeas corpus."); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). Therefore, Petitioner's request to appoint counsel is DENIED.

### IV.  REQUEST FOR A COPY OF MODEL FORM 9(a)

At various places in the petition and accompanying brief, Langley requests that the Court send him a model form under Rule 9(a). It appears to the Court that Langley is referring to the Model Form for Use in 28 U.S.C. § 2254 Cases Involving a Rule 9

Issue ("the Model Form"), found in the Appendix of Forms of the
Rules Governing Section 2254 Cases in the United States District
Courts ("the Rules").  When the Rules were adopted in 1976, Rule
9(a) stated as follows:

> **(a) Delayed petitions.** A petition may be dismissed if it
> appears that the state of which the respondent is an
> officer has been prejudiced in its ability to respond to
> the petition by delay in its filing unless the petition
> shows that it is based on grounds of which he could not
> have had knowledge by the exercise of reasonable
> diligence before the circumstances prejudicial to the
> state occurred.

The advisory committee notes accompanying the 1976 adoption of
Rule 9 provided that "[i]f the delay is more than five years after
the judgment of conviction, prejudice is presumed, although this
presumption is rebuttable by the petitioner."  The Model Form
notified the petitioner that his petition may be dismissed pursuant
to Rule 9, and provided the petitioner an opportunity to explain
why there was a delay in the filing of the petition.

In 1996, the Antiterrorism and Effective Death Penalty Act
("AEDPA") established a one-year statute of limitations for the
filing of federal habeas corpus petitions pursuant to 28 U.S.C.
§ 2254.  See 28 U.S.C. § 2244(d)(1).  In 2004, the Rules Governing
Section 2254 Cases were amended, and Rule 9(a) was deleted because
it was superseded by the statute of limitations established in the
AEDPA.  Therefore, Rule 9(a) and the associated Model Form no

6

longer exist.[5]   Accordingly, Langley's request that the Court send him a model form under Rule 9(a) is DENIED.[6]

## V.   REQUEST FOR AN EVIDENTIARY HEARING

In the request for relief, Langley asks this Court to conduct an evidentiary hearing.   Construing Langley's pleadings liberally,[7] the Court considers whether he is entitled to an evidentiary hearing because of the arguments set forth in his federal habeas petition.

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007).   In this case, Langley's petition is barred by the statute of limitations. Therefore, he is not entitled to an evidentiary hearing on the

---

[5]   As amended, Rule 9 only addresses successive petitions.

[6]   The Court notes that although Langley did not receive the Model Form, and the form no longer applies, Langley's brief accompanying his petition, and his response to Respondent's Motion to Dismiss both provide generalized explanations for why he did not file a direct appeal and why he did not file his habeas petition sooner.

[7]   "[A] pro se litigant is entitled to a liberal reading of [his] pleadings."   Jacobi v. Blocker, 153 F.R.D. 84, 86 (E.D. Va. 1994); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007).   It is with this principle in mind that the Court construes the various pleadings submitted by this pro se petitioner.

7

merits of his claims.

As further explained below, the dispositive issue in this case is the expiration of the statute of limitations and whether Langley is entitled to equitable tolling. Under the AEDPA, the Court exercises its discretion when determining whether to conduct an evidentiary hearing on the issue of equitable tolling. See Holland v. Florida, 539 F.3d 1334, 1340 (11th Cir. 2008). When further factual development is necessary, the Court may choose to expand the record with additional documentary evidence before, or instead of, holding a full evidentiary hearing. See Williams v. Woodford, 384 F.3d 567, 590-91 (9th Cir. 2004); Raines v. United States, 423 F.2d 526, 529-30 (4th Cir. 1970). If expanding the record results in a sufficiently developed factual record, an evidentiary hearing on the issue of equitable tolling may be unnecessary. See Warren v. Harrison, 244 F. App'x 831, 832 (9th Cir. 2007) (concluding that "[t]he district court did not abuse its discretion when it denied [petitioner's] request for an evidentiary hearing regarding his asserted mental illness because he was given an opportunity to expand the record, the record was sufficiently developed, and [petitioner's] allegations are undermined by countervailing evidence in the record"); Eichler v. Subia, No. CIV S-07-0516, 2010 WL 891248, at *8 n.7 (E.D. Cal. Mar. 8, 2010) (finding that an evidentiary hearing was unnecessary because "the court has before it petitioner's prison mental health records for the entire period

of time at issue").

In this case, the Court took the intermediate step of expanding the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases to include Langley's mental health records maintained by the prison. The records supplied to the Court, which cover the period of time from February 1, 2007, to January 27, 2010, include numerous doctors' notes and housing notifications, which document Langley's mental health condition, symptoms, treatment, and housing restrictions. In accordance with Rule 7(c), the Court provided Langley with an opportunity to file a response admitting or denying the correctness of the records provided by Respondent. Langley did not file a response, and the time to do so has expired. Considering the nature of the materials provided, and Langley's failure to dispute their accuracy, the Court FINDS that the evidence contained in Langley's mental health records sufficiently develops the factual record, rendering an evidentiary hearing on the issue of equitable tolling unnecessary.

The Court FINDS that an evidentiary hearing is not required because the facts in the existing record are sufficient to resolve the legal issues raised. See, e.g., Beaver v. Thompson, 93 F.3d 1186, 1190 (4th Cir. 1996). Accordingly, Langley's request for an evidentiary hearing is DENIED.

## VI.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court need not address the merits of Langley's habeas

9

corpus petition because the Court FINDS that the petition is barred by the statute of limitations.[8]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal habeas corpus petitions pursuant to 28 U.S.C. § 2254. See 28 U.S.C. § 2244(d)(1). The statute also prescribes how the one-year limitation period is calculated, including the date on which the limitation period begins, id. § 2244(d)(1), and the circumstances in which the limitation period may be tolled, id. § 2244(d)(2).

## A. Commencement of the Statute of Limitations

The AEDPA provides that:

---

[8] Alternatively, Respondent asserts that the petition should be dismissed because Langley did not exhaust his state court remedies, and his claims are now procedurally defaulted. (M. Dismiss 3-4.) In response, Langley alleges that he "did not exhaust his state remedies because . . . the factual predicate of this claim could not have been previously discovered through the exercise of due diligence." (Pet'r's Br. 9.) As discussed in Section VI(A) herein, the factual predicate of Langley's claims was, or should have been, known to him when the circuit court entered final judgment against him. See McKinney v. Ray, No. 3:07cv266, 2008 WL 652111, at *2 (E.D. Va. Mar. 11, 2008); Phillips v. Spencer, 477 F. Supp. 2d 306, 311-12 (D. Mass. Jan. 24, 2007). Langley also argues that he could not file a direct appeal because the "Virginia Rule concerning pleas of guilty states that, in the absence of jurisdictional error[,] appeal is not applicable." (Pet'r's Br. 20.) Although Langley may not have been able to present his claims to the state courts through direct appeal, he could have exhausted his state court remedies through a state habeas corpus petition presented to, or appealed to, the Virginia Supreme Court. See, e.g., Anderson v. Warden of Powhatan Corr. Ctr., 281 S.E.2d 885 (Va. 1981) (considering a habeas corpus petition in which the petitioner challenged his guilty plea, alleging that it was involuntary).

The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Ordinarily, the limitation period for filing a federal habeas corpus petition commences when the petitioner's conviction becomes final. See 28 U.S.C. § 2244(d)(1)(A). Langley states that "the factual predicate of this claim could not have been previously discovered through the exercise of due diligence." (Pet'r's Br. 9.) The Court construes Langley's assertion as an argument that the statute of limitations in his case should be calculated pursuant to the belated commencement date in § 2244(d)(1)(D).

Under 28 U.S.C. § 2244(d)(1)(D), the one-year limitation period may run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Pursuant

11

to this provision, the limitation period "commences when the factual predicate 'could have been discovered,' not when it was actually discovered by a given prisoner." Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000); see also Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); Carter v. Virginia, No. 3:09cv121, 2010 WL 331758, at *3 (E.D. Va. Jan. 26, 2010). Moreover, the relevant inquiry is "when the petitioner knows, or through due diligence could have discovered, the factual predicate for a potential claim, not when he recognizes their legal significance." McKinney v. Ray, No. 3:07cv266, 2008 WL 652111, at *2 (E.D. Va. Mar. 11, 2008); see also Owens, 235 F.3d at 359; Johnson v. Polk, No. 1:07cv278, 2008 WL 199728, at *3 (M.D.N.C. Jan. 22, 2008); Phillips v. Spencer, 477 F. Supp. 2d 306, 311 (D. Mass. Jan. 24, 2007) ("'[F]actual predicate' . . . mean[s] evidentiary facts or events rather than court rulings or legal consequences of the facts.").

Langley argues that he did not discover the factual predicate of his claim until "on or about May 13, 2009," when he asked an inmate helper to explain to him the elements of second degree murder. (Pet'r's Br. 9.) Langley's recent enlightenment about the elements of the crime to which he pleaded guilty equates to a realization about the legal significance of the facts of his case, not a discovery of the facts themselves. See Phillips, 477 F. Supp. 2d at 311-12 (concluding that petitioner's discovery of the elements of the crime to which he pleaded guilty from a recent

judicial opinion did not constitute a new factual predicate, and therefore, he was not entitled to belated commencement of the statute of limitations pursuant to § 2244(d)(1)(D)). "A claim of ignorance of the law is not the same as ignorance of the facts." Pardee v. Bauman, No. 2:09-cv-68, 2009 WL 3823909, at *2 (W.D. Mich. Nov. 13, 2009); see also McKinney, 2008 WL 652111, at *2 (noting that ignorance of the law is not a basis for tolling the statute of limitations). The *factual* circumstances underlying Langley's claims were known, or readily discoverable, in October 2006, when the circuit court entered final judgment against Langley for second degree murder. See McKinney, 2008 WL 652111, at *2 (finding that the facts supporting petitioner's claim that his attorney misinformed him about the elements of the crime to which petitioner pleaded guilty was discoverable when his conviction became final and he was sentenced). Thus, Langley has not demonstrated that the statute of limitations in his case should be calculated from the belated commencement date established in § 2244(d)(1)(D). See id. at *2; Phillips, 477 F. Supp. 2d at 311-12.

Because Langley cannot benefit from the belated commencement date provided for in § 2244(d)(1)(D), the statute of limitations in his case must be calculated from the ordinary commencement date established in § 2244(d)(1)(A). Accordingly, Langley had one (1) year from the date on which his conviction became final to file a

petition for federal habeas corpus relief. Id. § 2244(d)(1)(A); Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). Langley's conviction became final on November 27, 2006,[9] which was thirty (30) days after the circuit court's sentencing order was entered, and the date when Langley could no longer appeal his conviction. See 28 U.S.C. § 2244(d)(1)(A) ("The limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review *or the expiration of the time for seeking such review.*" (emphasis added)); Va. Code § 8.01-675.3. (providing thirty (30) days to file an appeal from a decision of the circuit court); Harris, 209 F.3d at 328 n.1. Therefore, absent any applicable tolling period, Langley had until November 27, 2007, to file his federal habeas corpus petition. The instant petition was not executed until August 18, 2009, which was 630 days beyond the applicable limitations period.

## B. Statutory Tolling

A person in state custody may toll the running of the limitation period during the time in "which a properly filed application for State post-conviction or other collateral [proceeding] . . . is pending." 28 U.S.C. § 2244(d)(2). An

---

[9] The time in which Langley could appeal his conviction expired on Friday, November 24, 2006. However, the state courts were closed on November 24, 2006, in observance of the Thanksgiving holiday. See Va. Code §§ 2.2-3300, 17.1-207. Therefore, Langley had until Monday, November 27, 2006, to file an appeal. See Va. Code § 1-210(B).

14

application remains pending throughout the state review process, including the time period between a lower state court's decision and the filing of a notice of appeal to a higher state court. <u>Carey v. Saffold</u>, 536 U.S. 214, 219-21 (2002); <u>Rouse v. Lee</u>, 339 F.3d 238, 243-44 (4th Cir. 2003) (noting that a state post-conviction proceeding for § 2244(d)(2) tolling purposes encompasses all state-court proceedings, "from initial filing [in the trial court] to final disposition by the highest state court" (quoting <u>Taylor v. Lee</u>, 186 F.3d 557, 561 (4th Cir. 1999))).

Langley did not file any post-conviction or other collateral proceedings in state court prior to filing the instant petition in this Court. Therefore, Langley is not entitled to the benefit of any statutory tolling.

## C. Equitable Tolling

Although Langley cannot avail himself of any statutory tolling, he may be entitled to equitable tolling of the statute of limitations. Langley argues that his delay in filing the instant habeas corpus petition should be excused under Rule 9(a) because the delay was less than five (5) years, and thus "[t]he state has the burden of showing . . . prejudice" because of the delay. (Pet'r's Resp. M. Dismiss 2-3.) Langley appears to mistakenly believe that the timeliness of his petition is governed by the doctrine of laches, as embodied in Rule 9(a) of the Rules Governing

Section 2254 Cases in the United States District Courts,[10] which were adopted in 1976. However, Rule 9(a), and its associated "prejudice" analysis, was superseded in 1996 by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1), which established a one-year statute of limitations for filing federal habeas corpus petitions.

Under the AEDPA, which governs the timeliness of Langley's petition, a petitioner may benefit from equitable tolling only if he "presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse, 339 F.3d at 246. The petitioner must "establish[] two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Lawrence v. Florida, 549 U.S. 327, 336 (2007); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Furthermore, "any resort to equity must be reserved for those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008); Harris, 209 F.3d at 330; Little v. United States, 184 F. Supp. 2d

---

[10]    Rule 9(a) provided that "[a] petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing." The advisory committee notes accompanying Rule 9 stated that "[i]f the delay is more than five years after the judgment of conviction, prejudice is presumed . . . . Otherwise, the state has the burden of showing such prejudice."

489, 494 (E.D. Va. 2002)(quoting Harris with approval). The petitioner "bears the burden of establishing . . . that he is entitled to the benefit of the doctrine of equitable tolling." Doiley v. South Carolina, No. 3:08-3175, 2009 WL 3602029, at *4 (D.S.C. Oct. 27, 2009); see also Pace, 544 U.S. at 418.

In the pleadings Langley submitted to this Court, he indicated that he is "mentally ill" (Pet'r's Br. 20), has an "unusually low mental capacity"[11] (Pet'r's Br. 5), and "has been in the care of the Respondent's mental health personnel since he had been placed in the custody of the Respondent" (Pet'r's Resp. M. Dismiss 2). "As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004). However, "proof of an existing mental illness, or claims that a petitioner is taking psychiatric medication or is under psychiatric care will not automatically warrant equitable tolling." Robison v. Hinkle, 610 F. Supp. 2d 533, 539 (E.D. Va. 2009); see also McSwain v. Davis, 287 F. App'x 450, 456 (6th Cir. 2008) ("[M]ental incompetence is not a *per se* reason to toll a

_____

[11] There is no elaboration on Langley's assertion that he has an "unusually low mental capacity," apart from his mental illness. Even so, the Court notes "that a low educational level, even to the point of illiteracy, does not automatically entitle an inmate to equitable tolling." Tibbs v. Adams, No. CIV S-05-2334, 2009 WL 3165390, at *6 (E.D. Cal. Sept. 29, 2009); see also Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999).

17

statute of limitations."). In addition to demonstrating that a petitioner is incapacitated by mental illness or the side effects of psychiatric medications, "[a] petitioner must also allege facts sufficient to demonstrate the existence of 'a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing.'" Robison, 610 F. Supp. 2d at 539-40 (quoting Rios v. Mazzuca, 78 F. App'x 742, 743 (2d Cir. 2003)).

The Fourth Circuit has not delineated any specific criteria for determining whether a petitioner suffers from a mental incapacity that warrants equitably tolling the statute of limitations. However, numerous federal courts consider the following factors:

(1) Whether the petitioner was declared incompetent in a legal adjudication. See McCray v. Oxley, 553 F. Supp. 2d 368, 373 (D. Del. 2008); Lawless v. Evans, 545 F. Supp. 2d 1044, 1049 (C.D. Cal. 2008).

(2) Whether the petitioner was "able to pursue legal action during the period of his or her alleged incapacity." Smith v. Saffle, 28 F. App'x 759, 760 (10th Cir. 2001); see also Sosa, 364 F.3d at 513; Robison, 610 F. Supp. 2d at 540.

(3) Whether the severity of symptoms and response to treatment as reflected in petitioner's medical records, if available, evidence an inability to timely file a habeas corpus petition. See Lawless, 545 F. Supp. 2d at 1049-50.

Based on a thorough review of the pleadings, state court records, and the seventy-one (71) pages of Langley's medical records submitted by Respondent, the Court FINDS that Langley is entitled to have the statute of limitations tolled for a period of one (1) day, which is insufficient to render his petition timely filed.

Langley's mental health records indicate that he suffers from paranoid schizophrenia, with a history of suicidal ideations and gestures. (Sentencing Tr. at 23, Commonwealth v. Langley, No. CR06000931 (Va. Cir. Ct. Oct. 6, 2006); Mental Health Appraisal Form dated 2/1/07;[12] Progress Notes dated 8/29/08.) Langley takes psychiatric medications, specifically haldol and cogentin,[13] to treat his mental health condition. (Mental Health Appraisal Form dated 2/1/07; Informed Consent of Psychotropic Medication dated 2/12/07.) Langley occasionally experiences auditory and visual hallucinations.[14] (Complaint & Treatment dated 6/6/07; Special

---

[12] The documents cited in this subsection are part of the seventy-one (71) pages of mental health records filed under seal as Document No. 21.

[13] On June 11, 2008, Langley was also prescribed celexa for depression. (Informed Consent to Treatment with Medications dated 6/11/08; Complaint & Treatment dated 6/11/08.)

[14] Langley's medical records from the limitation period provide only generalized references to Langley's hallucinations. However, the hallucinations are more specifically described in later records. Langley's visual hallucinations include seeing two-headed monsters in the shower. (Progress Notes dated 8/29/08.) His auditory hallucinations involve hearing voices commanding him to hurt himself or others. (Progress Notes dated 2/5/08; Mental Health Monitoring Report dated 2/8/08.)

Housing Assignment dated 6/8/07; Complaint & Treatment dated 7/9/07.) Langley also suffers from depressive symptoms and suicidal ideations.[15]   (Mental Health Monitoring Report dated 2/8/08; Complaint & Treatment dated 6/11/08; Complaint & Treatment dated 10/29/08.)  The Department of Corrections assigned Langley a mental health classification of MH-2, indicating "mild to moderate impairment." (Mental Health Appraisal Form dated 2/1/07.)

It does not appear that Langley has ever been adjudicated incompetent.   Langley's schizophrenia was mentioned at his sentencing (Sentencing Tr. at 22-25, Commonwealth v. Langley, No. CR16000931 (Va. Cir. Ct. Oct. 6, 2006)), but there is no indication that his competence was ever questioned in the state court proceedings.  Furthermore, the Court notes that Langley does not suggest that he was mentally incompetent at the time he pleaded guilty.  Rather, he argues that he was not informed of all of the elements of the crime, and therefore, his plea was unknowing. Accordingly, this factor weighs against tolling the statute of limitations.

There is no evidence that Langley filed any appeal, state habeas, or other motion in any court following his conviction, prior to filing the instant petition in this Court.  In fact, Respondent's

---

[15]   The Court notes that "depression, even if severe, is 'a normal incident of prison life' that does not excuse an untimely filing."  United States v. Harris, 268 F. Supp. 2d 500, 507 (E.D. Pa. 2003) (quoting Martin v. Ayers, 41 F. App'x 972, 973 (9th Cir. 2002)).

alternative claim that Langley failed to exhaust his state remedies supports a finding that Langley did not pursue any legal action during the limitation period. Although the failure to pursue other relief does not necessarily indicate that Langley was incapable of doing so, it may support a finding that equitable tolling is appropriate.

The mental health records supplied to the Court, which span from February 1, 2007, to January 27, 2010, indicate that Langley's symptoms, treatment, and confinement varied during the relevant period. Langley's Mental Health Appraisal Form dated February 1, 2007, the earliest record available to the Court,[16] indicates that Langley suffers from schizophrenia with a history of suicidal behavior, which is treated with medications. (Mental Health Appraisal Form dated 2/1/07.) On February 1, 2007, Langley's classification was MH-2, indicating "mild to moderate impairment," and he was under "no mental health restrictions." Id. Langley's

---

[16] The Court notes that the statute of limitations began to run when Langley's conviction became final on November 27, 2006. Because the records provided to the Court do not start until February 1, 2007, the Court has no evidence regarding Langley's mental health status between November 27, 2006, and February 1, 2007. However, it is unnecessary to further expand the record by supplementing the existing record with documents from this earlier time period. Even if the Court determines that Langley is entitled to equitable tolling for the entire period between November 27, 2006, and February 1, 2007, a period of sixty-six (66) days, Langley still filed his federal habeas petition over one (1) year late. See Martin v. Ayers, 41 F. App'x 972, 973 (9th Cir. 2002) ("The petition must still be dismissed . . . if it would be late even after tolling were taken into account.").

treatment forms from February 12, 2007, through May 31, 2007, indicate that Langley was pleasant, alert, cooperative, made appropriate eye contact, and was negative for psychotic symptoms. (Complaint & Treatment dated 2/12/07; Complaint & Treatment dated 5/7/07; Complaint & Treatment dated 5/31/07.) On May 31, 2007, Langley was referred for evaluation because he refused to take his medications. (Complaint & Treatment dated 5/31/07.) Six (6) days later, on June 6, 2007, Langley presented with psychotic symptoms, was placed under mental health observation, and was moved to a modified stripped cell, where he was only allowed access to a mattress, safety blanket, boxers, and t-shirt. (Complaint & Treatment dated 6/6/07; Special Housing Notification dated 6/6/07.) The next day, Langley was removed from precautionary status and the restrictions on the items he was able to access were removed. (Complaint & Treatment dated 6/7/07; Special Housing Notification dated 6/7/07.) On June 8, 2007, Langley was evaluated because he was experiencing auditory hallucinations. (Mental Health Screening dated 6/8/07.) Approximately one (1) month later, on July 9, 2007, Langley was evaluated during psychiatric rounds, and he complained of increased auditory hallucinations. (Complaint & Treatment dated 7/9/07.) The evaluating psychiatrist noted that his report of increased hallucinations did not seem credible.[17] Id. Langley's

_____

[17] The credibility of Langley's complaints was also questioned on other occasions outside the limitation period. On February 5, 2008, the treating psychiatrist surmised that Langley was "using

medical records for the remainder of the limitation period, through December 3, 2007, reveal that although Langley was allowed to be placed in special housing, there were "no mental health concerns" or incidents. (Special Housing Notification dated 9/5/07; Mental Health Monitoring Report dated 9/5/07; Mental Health Monitoring Report dated 10/5/07; Mental Health Monitoring Report dated 12/3/07.)

Because the AEDPA establishes a clear limitation period with prescribed tolling provisions, equitable tolling is reserved for those extraordinary circumstances in which it would be unconscionable to strictly apply the statute of limitations. See Green, 515 F.3d at 304; Harris, 209 F.3d at 330; Little, 184 F. Supp. 2d at 494. Taken as a whole, Langley's mental health records suggest that he benefits from treatment, and that when he is compliant with his medications he is coherent, competent, and negative for psychotic symptoms. Furthermore, Langley's mental health records from both during and after the relevant period are replete with notations that Langley's "[t]houghts [are] linear, organized, [and] goal-oriented" (Progress Note dated 2/5/08; see also Complaint & Treatment dated 2/12/07; Mental Health Monitoring

---

[his mental health] symptoms to secure special housing since he is uncomfortable in [general population]." (Progress Note dated 2/5/08.) On February 8, 2008, it was again noted that Langley had a history of "choosing seg[regation] and possibly exaggerating [his symptoms] to keep [a] single cell." (Mental Health Monitoring Report dated 2/8/08.)

Report dated 2/8/08), and that his cognitive ability and awareness are within normal limits (Mental Health Appraisal Form dated 2/1/07; Mental Health Services form dated 8/6/08). Accordingly, the Court FINDS that because of Langley's apparent cognitive ability and organized thought processes, his mental health symptoms are not severe enough to warrant equitable tolling of the statute of limitations.

However, there were variations in the nature of Langley's confinement that do warrant a minor period of equitable tolling. Langley's records indicate that occasionally he was placed in a "modified stripped cell" for "mental health observation." (Special Housing Notification dated 6/6/07, 2/5/08-2/18/08.) While in the modified stripped cell, Langley was allowed to have limited bedding, such as a mattress and safety blanket, limited clothing, and limited toiletries. Id. Significantly, Langley was not permitted to have writing paper, a pen, or reading materials. Id. Because Langley could not possess the materials necessary to file a habeas petition while placed in a modified stripped cell, he is entitled to have the statute of limitations equitably tolled during this time period. See Wilson v. Va. D.O.C., No. 7:09cv127, 2009 WL 3294835, at *5 (W.D. Va. Oct. 13, 2009) ("If [Petitioner] could prove that he could not possess legal materials or a pen for significant periods during 2006 and 2007, such that equitable tolling of this period was warranted, the court could consider his petition to be timely

24

filed."). The record reveals that Langley spent June 6, 2007, and February 5, 2008, through February 18, 2008, a total of fifteen (15) days, in a modified stripped cell without access to writing or reading materials. (Special Housing Notification dated 6/6/07, 2/5/08-2/18/08.) However, only one (1) day, June 6, 2007, occurred prior to the expiration of the statute of limitations on November 27, 2007. Accordingly, Langley was entitled to one (1) day of equitable tolling, giving him until November 28, 2007, to file his federal habeas petition.[18] Langley did not file his federal habeas petition until August 18, 2009, which is 629 days after the statute of limitations expired. Therefore, the Court FINDS that Langley's petition is time-barred, and RECOMMENDS that the instant petition be DENIED.

## VII. **RECOMMENDATION**

For the foregoing reasons, the Court, having found that the instant petition was not timely filed and is barred by the statute of limitations, RECOMMENDS that Langley's petition for a writ of

---

[18] Even if the Court tolled the statute of limitations for the sixty-six (66) days during the limitation period that the Court does not have Langley's medical records, as explained supra in footnote 16, Langley would have until Monday, February 4, 2008, to file his federal habeas petition. As explained above, Langley was not placed in a modified stripped cell again until Tuesday, February 5, 2008. Furthermore, Langley still did not file his federal habeas petition until August 18, 2009, which is 563 days after the statute of limitations expired under this liberal tolling allowance.

habeas corpus be DENIED, that Respondent's Motion to Dismiss be GRANTED, and that all of Langley's claims be DISMISSED WITH PREJUDICE. As noted above, the Court also GRANTS Respondent's Motion to Seal Pursuant to Local Civil Rule 5 (Doc. No. 18).

Langley failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C, § 2233(c)(2). Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).

## VIII. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's specific objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of

those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140, 153-54 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433, 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).

F. Bradford Stillman

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

May 28, 2010

27

<u>**CLERK'S MAILING CERTIFICATE**</u>

A copy of the foregoing Report and Recommendation was mailed

this date to the following:

Steven Anthony Langley, #367023
Sussex I State Prison
24414 Musselwhite Drive
Waverly, Virginia 23890
*Pro Se*

Alice Theresa Armstrong
Office of the Attorney General
900 E Main St
Richmond, Virginia 23219
*Counsel for Respondent*


Fernando Galindo,
Clerk of Court

By: _____
Deputy Clerk

*May 28*, 2010